# WINE STORAGE AGREEMENT

This Wine Storage Agreement (the "*Agreement*") is entered into between CELLAR, LLC ("*Cellar*") and ___Reid Buerger___ ("*Customer*") on: ___10/02/2006___.

WHEREAS, Cellar is in the business of storing wine for its customers; and

WHEREAS, Customer owns wine that Customer wishes to store at Cellar's wine storage facility, according to the terms and conditions of this Agreement; and

WHEREAS, Cellar is willing to store Customer's wine according to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the above premises, the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Cellar and Customer hereby agree as follows:

1. Storage.

Cellar agrees to store Customer's wine at Cellar's facilities according to the terms and conditions of this Agreement.

2. Term and Charges.

(a) Fixed Charges.

(Customer: Please initial the blank space next to the term option that will apply to this Agreement.)

*[initialed]* The term of this Agreement shall be one year, commencing upon the execution of this Agreement. Customer shall pay Cellar the Annual Storage Charge (as calculated herein) owed for the term of this Agreement upon execution of this Agreement, and such Annual Storage Charge is nonrefundable. The Annual Storage Charge owed by Customer to Cellar shall be based on the capacity of the storage locker used to store Customer's wine (equal to $2 per case capacity of said storage locker per month, or $3.50 for managed storage). The capacity of the storage locker used to store Customer's wine is ___250___ cases, and the total Annual Storage Charge for one year, regardless of use, is $ ___10,500___. Customer will be invoiced for subsequent one-year periods thirty (30) days prior to the beginning of such period. The Annual Storage Charge for all subsequent one-year periods is due on the annual anniversary date of this Agreement, unless written notice is received by Cellar from the Customer of Customer's desire to terminate this Agreement at least thirty (30) days prior to the anniversary date.

EXHIBIT B

The term of this Agreement shall be one month, commencing upon the execution of this Agreement. Customer shall pay Cellar the Monthly Storage Charge (as calculated herein) owed for the term of this Agreement upon execution of this Agreement, and such Monthly Storage Charge is nonrefundable. The Monthly Storage Charge owed by Customer to Cellar shall be based on the capacity of the storage locker used to store Customer's wine (equal to $3.50 per case capacity of said storage locker per month, or $5 for managed storage). The capacity of the storage locker used to store Customer's wine is _____ cases, and the total Monthly Storage Charge, regardless of use, is $_____. Customer will be invoiced for subsequent one-month periods ten (10) days prior to the beginning of such period. The Monthly Storage Charge for all subsequent one-month periods is due on the day following the expiration of the previous term, unless written notice is received by Cellar from the Customer of Customer's desire to terminate this Agreement at least ten (10) days prior to the expiration of the term.

(b) Holding Locker. Regardless of which option above is selected by Customer, Cellar agrees to hold any deliveries of Customer's wine received by Cellar in Cellar's holding locker for thirty (30) days and to notify Customer of the arrival of such wine within a reasonable time after arrival. If, after 30 days, Customer has not moved the delivered wine from the holding locker to Customer's storage locker or authorize Cellar to do so, Cellar shall charge Customer an additional $3.50 per case per month for wine left in the holding locker.

(c) Access to Locker. Customer shall have access to its storage locker at any time during Cellar's normal business hours, as determined from time to time by Cellar. Additionally, Customer shall have access to its own storage locker for the duration of any event for which Customer makes authorized use of Cellar's private conference and/or tasting rooms, regardless of whether these events take place during normal business hours. Additional access to Customer's storage locker outside of normal business hours may be pre-arranged by mutual agreement between Customer and Cellar or, when available, through Customer's contact of Cellar's after-hours attendant (the "*After-Hours Attendant*"). The available days and times of the After-Hours Attendant shall be determined in the sole discretion of Cellar. If the After-Hours Attendant is available and able to respond to Customer's request for access, Customer shall be provided a one-hour time window during which Customer shall have access to its storage locker. The fee for storage locker access provided in such a manner shall be $100 per occasion. Cellar hereby makes no guarantee as to the availability or response of the After-Hours Attendant.

3. Indemnification and Limitation of Liability.

(a) Risk of Loss.

(Customer: Please initial the blank space next to the insurance option that will apply to this Agreement.)

      \_\_\_\_ Customer elects to buy specific wine coverage from Cellar according to the terms of the insurance rider attached to this Agreement.

*[initialed: KSB]* Customer has sufficient homeowners' insurance or similar insurance, a copy of the policy for which is attached to this Agreement, that provides coverage for wine stored outside the home, and said insurance shall cover any and all loss of wine sustained by Customer while such wine is in Cellar's storage facility. Alternatively, except as provided in this Section 3, Customer is solely and personally responsible for any and all risk of loss of wine stored at Cellar's wine storage facility pursuant to this Agreement. Customer agrees that any and all insurance to be carried by Customer under the terms of this option shall contain a clause whereby the insurer waives its rights to subrogation against Cellar, its agents, officers and employees for any loss or damage to its property or to the property of others covered by insurance.

(b) Use; Compliance with Laws. Customer shall use the storage space for the storage of Customer's wine and for no other purpose. Customer agrees that the space will not be used for operation of any business or for human or animal occupancy, nor will trash, food or other materials be allowed to accumulate. No items shall be stored in the space which shall be in violation of any order or requirement imposed by any Board of Health, Department of Sanitation, Police Department or other governmental agency, or in violation of any other legal requirement. Customer agrees to fully comply with all federal, state and local laws regarding the ownership, transportation, labeling, taxation or other use of wine as contemplated by this Agreement. Customer further agrees to indemnify Cellar and Cellar's members, managers (if any), employees, agents and other representatives from and against any loss incurred by Cellar as a result of Customer's failure to comply with such laws.

(c) Liquor Licenses. Customer hereby represents that it is not a named party on any Missouri wholesale, retail, on-premises or any other liquor license and acknowledges that Customer would be in violation of applicable laws and would cause Cellar to be in violation of applicable laws if Customer were a named party to such licenses. Customer agrees to indemnify Cellar and Cellar's members, managers (if any), employees, agents and other representatives from and against any loss incurred by Cellar as a result of Customer's failure to uphold its representations and acknowledgements under this subsection.

(d) Indemnity. Customer agrees to indemnify and hold harmless Cellar and Cellar's members, managers (if any), employees, agents and other representatives, from and against any loss, liability, damage, cost or expense (including, without limitation, reasonable attorney's fees) actually incurred or suffered by Cellar, or Cellar's members, managers (if any), employees, agents and other representatives, arising out of or relating to a breach of this Agreement by Customer ~~or otherwise relating to the storage of Customer's wine.~~ *[initialed: KSB]*

(e) Limitation of Liability. In addition to any limitations set forth elsewhere in this Agreement, Cellar's liability under this Agreement shall be limited to the following:

(i) in the event of any damage or loss, in no event shall Cellar's liability under this Agreement exceed the most recent stated value of Customer's wine stored at Cellar's storage facility as reflected in the records of Cellar. Customer agrees that it is Customer's responsibility to assure that the stated value of Customer's stored wine is current;

(ii) in no event shall Cellar be liable for any special, indirect, exemplary, consequential or punitive damages, including, but not limited to, lost profits; and

(iii) ~~any such loss claimed by Customer under this Section shall be net of any insurance proceeds payable to Customer in respect of such damage or loss.~~ *[initialed]*

### 4. Lien.

Cellar claims a lien on all items of personal property stored in Customer's storage locker. Property stored in Customer's storage locker may be sold by Cellar to satisfy this lien for any rent, labor or other expenses or charges owed by Customer if Customer is in default under the terms of this Agreement or any other agreement between Customer and Cellar for a period of more than ~~thirty (30)~~ *ninety (90)* days. Such sale shall be done in a commercially reasonable manner as determined by Cellar, with any proceeds from the sale to be used first to satisfy the lien and any surplus to be held for delivery on demand to Customer for one year after receipt of proceeds of the sale and satisfaction of the lien. No proceeds shall be paid to Customer until Customer files a sworn affidavit with Cellar that there are no other valid liens outstanding against the property sold and that Customer shall indemnify Cellar for any damages incurred or moneys paid by the operator due to claims arising from other lienholders of the property sold. After the one-year period described above, any proceeds remaining after satisfaction of the lien shall be considered abandoned property to be reported and paid to the state treasurer in accordance with laws pertaining to the disposition of unclaimed property. Cellar may otherwise dispose of any property subject to its lien that has no commercial value.

### 5. Tasting Room.

(a) Use of Room. A tasting room on Cellar's premises shall be available for use by Customer, as well as all other clients using Cellar's storage lockers, on a first-come, first-served basis. As used hereafter in this subsection, references to Customer's responsibilities refers only to those events reserved, staged or hosted by Customer. Cellar shall coordinate the reservation of the tasting room and will make all final determinations on scheduling matters. Events held at the tasting room during normal business hours are free and include the use of Cellar's glassware and kitchen. Customer shall be responsible for the replacement costs of any and all glassware broken during the course of an event. Customer shall be responsible for providing its own eating utensils and shall have the right to provide its own food or catering through any reputable source or vendor. Events held after normal business hours shall carry a charge of $50, which shall cover the cost of a Cellar employee staying on the premises during the course of the event. After-hours events shall run from 6 to 9 p.m. unless otherwise arranged in advance by Customer and Cellar.

(b) Release from Liability. In contemplation of reservation of the tasting room, Customer acknowledges that Cellar shall not provide Customer with any alcoholic beverages nor is it in any manner Cellar's responsibility to monitor any alcoholic beverage consumption during the duration of the event. Customer recognizes and agrees that Cellar is not responsible for any injury or loss of property suffered as a result of the use of the tasting room, regardless of the cause. In consideration of Customer's ability to use the tasting room, Customer hereby releases, discharges and holds harmless Cellar, Cellar's members, managers (if any), employees, agents and other representatives from any and all claims that may result from Customer's use of the tasting room. Customer understands this release and waiver to be as broad and inclusive as the laws in the state of Missouri will permit.

6. General Provisions.

(a) Effective Date. This Agreement shall become effective as of the date of this Agreement.

(b) Termination. Either party may terminate this Agreement by providing written notice of termination to the other party. Any such termination shall be effective thirty (30) days after receipt of such termination notice. If Customer terminates the Agreement, Customer shall remove any remaining stored wine from Cellar's storage facilities within ten (10) days of termination. ~~Any paid Annual Storage Charge or Monthly Storage Charge shall not be refunded in the event Customer terminates this Agreement.~~ If Cellar terminates the Agreement, Cellar will ship any remaining stored wine to Customer's last-known address as maintained in Cellar's records, unless Customer otherwise notifies Cellar in writing within ten (10) days of Customer's receipt of Cellar's termination notice. ~~If Cellar terminates~~ the Agreement, Cellar shall refund that proportion of Annual Storage Charges or Monthly Storage Charges equal to the proportion of the one-year or one-month period of the Agreement, as applicable, that remains after the date of termination, with such proportions based on a 365-day year or a 30-day month, as applicable. The termination of this Agreement or any provision hereof shall not affect the rights and obligations of the parties with respect to actions taken or omissions made, or purchases or sales consummated, prior to the date of termination. *Upon termination of this* 

(c) Entire Agreement. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous statements, representations, warranties, actions, omissions, arrangements, understandings or other agreements of the parties in connection therewith.

(d) Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all such counterparts shall constitute but one and the same agreement.

(e) Assignment. Customer shall not, without the express prior written consent of Cellar, sublet, assign or transfer the rights or obligations under this Agreement or any part thereof.

5

(f) <u>Successors and Assigns</u>. This Agreement shall be binding upon each party and their respective permitted successors and permitted assigns and shall inure to the benefit and be enforceable by the other party and its permitted successors and assigns.

(g) <u>Severability</u>. In the event that one or more of the provisions contained in this Agreement is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect, and of the remaining provisions contained herein, shall not be in any way impaired thereby.

(h) <u>Relationship</u>. The relationship between Cellar and Customer shall be solely that of independent contractors, and this Agreement shall not be deemed to create any relationship of agency, employment, partnership or joint venture between the parties.

(i) <u>Additional Services</u>. The terms of this Agreement shall apply to any services (in addition to the storage of goods) rendered to Customer by Cellar, including, but not limited to, pick-up and/or delivery of goods, handling, repackaging and inventory, except as otherwise provided in such additional agreement as may be applicable to such services.

(j) <u>Amendment</u>. This Agreement shall not be amended or waived, nor shall any consent to any departure by any party from the terms and conditions thereof be effective, unless in a writing signed by or on behalf of each party.

(k) <u>Governing Law</u>. This Agreement shall be governed and construed in accordance to the laws of the State of Missouri, without regard to choice of law or conflict rules or laws.

*[The remainder of this page has been intentionally left blank; signature pages follow.]*

IN WITNESS WHEREOF, the undersigned parties hereby execute this Agreement as of the date hereof.

**CUSTOMER**

Signed: _____

Print Name:    Reid Buerger

**CELLAR, LLC**

Signed: _____

Print Name:    Marc Lazar

Title:    President